Docket Nos. 11-4499 & 11-4621

==================================================================

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

_____

## UNITED STATES OF AMERICA,

Appellant/Cross-Appellee,

v.

## VINCENT J. FUMO,

Appellee/Cross-Appellant.


_____

On Cross-Appeals from Judgment on resentencing in a criminal case
filed Nov. 10 and entered Nov. 28, 2011, in Crim. No. 06-CR-319-03
in the United States District Court
for the Eastern District of Pennsylvania (Buckwalter, J.)


=====================

## SECOND-STEP BRIEF FOR VINCENT FUMO:
## APPELLEE'S RESPONSE BRIEF
## AND PRINCIPAL BRIEF AS CROSS-APPELLANT

=====================

PETER GOLDBERGER
PAMELA A. WILK
50 Rittenhouse Place
Ardmore, PA  19003-2276

  (610) 649-8200

Attorneys for Appellee/
Cross-Appellant Fumo

TABLE OF CONTENTS

Table of Authorities ...................................... iii

Statement of Jurisdiction .................................. 1

Statement of the Issues With Statement of Place Raised ....... 2

Statement of Related Cases and Proceedings .................. 4

Statement of the Case

    a.  Counter-Statement of Procedural History .............. 4

    b.  Counter-Statement of Facts .......................... 8

Summary of Argument ........................................ 9

ARGUMENT FOR VINCENT FUMO AS CROSS-APPELLANT

    I.  THE DISTRICT COURT EXCEEDED THE SCOPE OF THIS
    COURT'S MANDATE BY REVISITING AND INCREASING THE
    RESTITUTION ASPECT OF MR. FUMO'S SENTENCE ............... 13

    II.  THE DISTRICT COURT ERRED BY IMPOSING
    PREJUDGMENT INTEREST ON THE RESTITUTION JUDGMENT ........ 27

        Standard or Scope of Review .......................... 27

        A.  The Defendant Preserves his Challenge to the
        Imposition of Any Prejudgment Interest on Criminal
        Restitution ......................................... 27

        B.  "Prejudgment" Interest to the Date of the
        Resentencing Was Illogically Added to Amounts of
        Restitution that Mr. Fumo Had Already Paid
        Following the First Sentencing ....................... 28

    III.  THE IMPOSITION OF RESTITUTION IN THIS CASE
    VIOLATED THE FIFTH AND SIXTH AMENDMENTS AS
    INTERPRETED BY THE SUPREME COURT ....................... 30

ARGUMENT FOR VINCENT FUMO AS APPELLEE

    THE DISTRICT COURT ACTED WITHIN ITS DISCRETION WHEN,
    UPON CONSIDERATION OF THE STATUTORY FACTORS, IT
    ALLOCATED THE RESTITUTION OWING TO CITIZENS ALLIANCE
    ON A 50/50 BASIS BETWEEN THE TWO DEFENDANTS,
    ENSURING BOTH THAT THE VICTIM HAD THE BENEFIT OF
    100% RESTITUTION AND THAT EACH DEFENDANT WOULD BE
    COMPELLED TO CONTRIBUTE TO THAT PAYMENT ................. 31

Conclusion ................................................ 48

Required Certifications .................................... 49

Cross–Appellant's Appendix: Volume One (per LAR 32.2(c))

1.  Notice of Cross-Appeal, filed 12/29/11 (DDE 938) ...... 1fsa

2.  Amended Judgment on Resentencing (Fumo) (DDE 930,
    EOD 11/28/11) ........................................ 2fsa

3.  The pertinent opinions of the district court were
    delivered from the bench and are found in the
    government's appendix, Volume II, at 149 (Tr.
    11/9/11, at 4), 199-200 (Tr. 11/10/11, at 42-45)
    (as to the mandate issue), and 149-50 (Tr. 11/9/11,
    at 5-7), 201 (Tr. 11/10/11, at 49-50) (as to the
    allocation issue).  The district court's complete
    bench opinion on resentencing runs over 46 tran-
    script pages (Tr. 11/10,11, at 3-49), and is found
    in U.S. App. II, 190-201.

Certificate of Service

TABLE OF AUTHORITIES

**Cases:**

Apprendi v. New Jersey, 530 U.S. 466 (2000) ........ 11, 30, 31

Arizona v. California, 460 U.S. 605 (1983) ................. 22

Bankers Trust Co. v. Bethlehem Steel Corp.,
    761 F.2d 943 (3d Cir. 1985) ........................... 22

Greenlaw v. United States, 554 U.S. 237 (2008) ......... 24, 26

Habecker v. Clark Equipment Co., 942 F.2d 210 (3d Cir. 1991)  23

Hughey v. United States, 495 U.S. 411 (1990) ............... 18

In re Kane, 628 F.3d 631 (3d Cir. 2010) ................... 45

Koon v. United States, 518 U.S. 81 (1996) ................. 27

Laborers' International Union of North America v.
    Foster Wheeler Corp., 26 F.3d 375 (3d Cir. 1994) ....... 23

Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266 (3d Cir. 2012) . 39

Pepper v. United States, 562 U.S. ---,
    131 S.Ct. 1229 (2011) ................... 14, 21, 22, 24-26

Seese v. Volkswagenwerk, A.G.,
    679 F.2d 336 (3d Cir. 1982) (per curiam) ............... 22

Skretvedt v. E.I. DuPont de Nemours,
    372 F.3d 193 (3d Cir. 2004) ....................... 17, 22

Southern Union Co. v. United States, 567 U.S. ---,
    132 S.Ct. 2344 (June 21, 2012) ..................... 11, 30

In re Teleglobe Communications Corp.,
    493 F.3d 345 (3d Cir. 2007) ........................... 39

United States v. Adams, 252 F.3d 276 (3d Cir. 2001) ........ 27

United States v. Akande, 200 F.3d 136 (3d Cir. 1999) ....... 18

United States v. Albertson, 645 F.3d 191 (3d Cir. 2011) ..... 17

United States v. Badaracco, 954 F.2d 928 (3d Cir. 1992) ..... 18

United States v. Carr, 25 F.3d 1194 (3d Cir. 1994) ......... 43

United States v. Copple, 24 F.3d 535 (3d Cir. 1994) ........ 22

United States v. Cottman, 142 F.3d 160 (3d Cir. 1998) ....... 21

United States v. Cotton, 535 U.S. 625 (2002) ............... 27

United States v. Fallon, 470 F.3d 542 (3d Cir. 2006) ....... 21

United States v. Feldman, 338 F.3d 212 (3d Cir. 2003) ....... 21

United States v. Fullmer, 584 F.3d 132 (3d Cir. 2009) ....... 30

United States v. Fumo, 655 F.3d 288 (3d Cir. 2011) ...... passim

United States v. Gaydos, 108 F.3d 505 (3d Cir. 1997) ....... 21

United States v. Hallman, 23 F.3d 821 (3d Cir. 1994) ....... 43

United States v. Hand, 863 F.2d 1100 (3d Cir. 1988) ........ 38

United States v. Holmes, 193 F.3d 200 (3d Cir. 1999) ....... 21

United States v. Hunter, 52 F.3d 489 (3d Cir. 1995) ........ 38

United States v. Jimenez Recio, 537 U.S. 270 (2003) ......... 3

United States v. Jimenez, 513 F.3d 62 (3d Cir. 2008) ....... 19

United States v. Kikumura, 947 F.2d 72 (3d Cir. 1991) ... 22, 23

United States v. Leahy, 438 F.3d 328
    (3d Cir. 2006) (en banc) ...................... 11, 30, 31

United States v. Leahy, 445 F.3d 634 (3d Cir. 2006) ........ 21

United States v. Miller, 594 F.3d 172 (3d Cir. 2010)  13, 14, 24

United States v. Morgan, 376 F.3d 1002 (3d Cir. 2004) ....... 19

United States v. Murray, 144 F.3d 270 (3d Cir. 1998) ....... 24

United States v. Negroni, 638 F.3d 434 (3d Cir. 2011) ....... 17

United States v. One Parcel of Real Property
    Known as 6109 Grubb Road, 886 F.2d 618 (3d Cir. 1989) ... 45

United States v. Pultrone, 241 F.3d 306 (3d Cir. 2001) .. 14, 25

United States v. Salinas-Cortez,
    660 F.3d 695 (3d Cir. 2011) ...................... 14, 25

United States v. Stadtmauer, 620 F.3d 238 (3d Cir. 2010) .... 17

United States v. Wise, 515 F.3d 207 (3d Cir. 2008) ......... 27

Zedner v. United States, 547 U.S. 489 (2006) ............... 39

**Constitution, Statutes and Rules:**

U.S. Const., amend. V (due process) .................. 3, 11, 30
U.S. Const., amend. VI (jury trial) ................. 3, 11, 30

18 U.S.C. § 3231 ......................................... 1
18 U.S.C. § 3553(a) .......................... 14, 34, 35, 41
18 U.S.C. § 3556 ........................................ 34
18 U.S.C. § 3563(b) ..................................... 46
18 U.S.C. § 3583(d) ..................................... 46
18 U.S.C. § 3613(c) ..................................... 44
18 U.S.C. § 3663(a) ..................................... 18
18 U.S.C. § 3663A(c) .................................... 18
18 U.S.C. § 3664(f) .................... 12, 34, 35, 41, 46
18 U.S.C. § 3664(h) ......... 11, 12, 26, 33-35, 40, 42, 43, 46
18 U.S.C. § 3664(m) ..................................... 41
18 U.S.C. § 3742(a,b) .................................... 1
18 U.S.C. § 3771(a) ..................................... 34

28 U.S.C. § 1291.......................................... 1

Fed.R.App.P. 28(a) ...................................... 15
Fed.R.App.P. 28.1 ....................................... 17

Fed.R.Crim.P. 35(a) ................................. 10, 29
Fed.R.Crim.P. 52(b) ..................................... 27

LAR 28.1 (3d Cir.)................................... 17, 40

USSG § 1B1.3 ............................................ 18
USSG § 2B1.1 ............................................ 18
USSG § 2B1.1, appl. note 3(A) (p.s.) .................... 18
USSG § 2B1.1, appl. note 3(C) (p.s.) .................... 18
USSG § 2B1.1, appl. note 3(E) (p.s.) .................... 19

**Miscellaneous:**

GAO, *Criminal Debt: Actions Still Needed to Address
    Deficiencies in Justice's Collection Efforts* (Report
    GAO-04-338, available at www.gao.gov/products/GAO-04-338) ..... 46

U.S. Dept. of Justice, EOUSA, *U.S. Attys' Annual
    Statistical Report: Fiscal Year 2011* (available at
    www.justice.gov/usao/reading_room/reports/asr2011/11statrpt.pdf) .......... 46

## STATEMENT OF JURISDICTION

The United States District Court for the Eastern District of Pennsylvania had subject matter jurisdiction under 18 U.S.C. § 3231, because the indictment charged federal offenses allegedly committed there. App. II, 11-16.[1] This Court has jurisdiction under 18 U.S.C. § 3742(a,b) and 28 U.S.C. § 1291. Mr. Fumo was resentenced on November 10, 2011 (App. II, 201); an amended judgment was signed November 25, 2011, and was filed and was entered on November 28, 2011. 1FSA 2; App. II, 73 (DDE 930). The government filed a timely notice of appeal to this Court on December 16, 2011. App. I, 2; App. II, 73 (DDE 933). The defendant filed a timely notice of cross-appeal on December 29, 2011. 1FSA 1 (DDE 938).

_____

[1] "App. II" refers to the separately-bound appendix filed by the appellant/cross-appellee United States, and marked "Volume II." "App. I" refers to the government's Volume I Appendix. Mr. Fumo's Volume One Appendix ("1FSA," for Fumo's Supplemental Appendix) is bound with this (his principal and response, second-step) brief. A Volume 2 appendix for the cross-appellant, cited as "2FSA --" is also being filed.

## STATEMENT OF THE ISSUES
## WITH STATEMENT OF PLACE RAISED

**Statement of Issues as Cross-Appellant:**

1.  Did the district court violate this Court's mandate in the prior appeal by increasing not only the Guidelines "loss" but also the restitution awarded in favor of Citizen Alliance and the State Senate, where the government did not brief the issue in its initial appeal, and this Court expressly "affirmed" the restitution amount in its prior judgment?

Where in the Record Raised and Ruled Upon:  Raised below in defendant's pre-hearing memoranda (DDE 905, at 27-28; DDE 910, at 8) and orally at sentencing hearing, App. II, 149.  Ruled upon at sentencing.  App. II, 199-200.

2.a.  Did the court below err in adding prejudgment interest to the restitution amounts, where there is no statutory authority for such interest to be awarded?

Where in the Record Raised and Ruled Upon:  Raised at original sentencing and preserved in prior appeal.  Renewed at the sentencing hearing, App. II, 149.  Ruled upon in prior appeal.  U.S. v. Fumo, 655 F.3d 288, 319-21 (3d Cir. 2011).

b.  Did the district court commit plain error by including prejudgment interest to the date of resentencing on amounts that Mr. Fumo had already paid on or after the date of the original sentencing?

Where in the Record Raised and Ruled Upon:  Not raised below.  However, the fact that substantial sums had already been paid was mentioned.  DDE 910, at 8 (dft. reply memo.); App. II, 166 (comments of defense counsel).

3.  Did the court below err under the Fifth and Sixth Amendments by awarding restitution in amounts not authorized by the facts necessarily determined by the jury's verdicts?

Where in the Record Raised and Ruled Upon:  Not raised below, nor required to be in light of then-controlling but since invalidated en banc Circuit precedent.  United States v. Jimenez Recio, 537 U.S. 270 (2003) (discussing preservation of issue made futile by Circuit precedent).

**Counter-Statement of the Issue on Government's Appeal:**

Should the judgment of sentence be affirmed, where the district court fulfilled its statutory duty to award full restitution to Citizens Alliance and exercised its discretion to apportion payment responsibility 50-50 between the two defendants, after considering both the economic circumstances of each defendant and the significant responsibility that each bore for the offense?

Where in the Record Raised and Ruled Upon:  Appellee Fumo does not dispute that the government adequately objected to the 50-50 allocation of the Citizens Alliance restitution below to allow it to be raised on appeal.

**STATEMENT OF RELATED CASES AND PROCEEDINGS**

This is a cross appeal.  The government's appeal is No. 11-4499.  Defendant/appellee/cross-appellant Fumo is not aware of any other related cases or proceedings.  The present appeal arises out of a remand from the decision on Docket Nos. 09-3388,

09-3389, 09-3390, and 09-3442, reported at 655 F.3d 288 (3d Cir. 2011).  Co-defendant Arnao did not appeal, and the government voluntarily dimissed its post-resentencing appeal as to her.

## COUNTER–STATEMENT OF THE CASE

Appellee/cross-appellant Vincent J. Fumo, a former Pennsylvania state senator, was convicted after trial on 137 counts of an indictment charging several fraud schemes and related offenses.  On resentencing following a prior appeal, he received a thoughtfully considered sentence of 61 months' imprisonment, followed by three years' supervised release.  He was also ordered to pay a fine of $411,000, special assessments totaling $13,700, and restitution of $3,435,548 -- representing an increase in the restitution of some $1.1 million over that imposed at the original sentencing.  The government now brings a second appeal claiming that Judge Buckwalter abused his discretion in not increasing the restitution by another $783,264.

### a.   Counter–Statement of Procedural History

Because the government's Statement of the Case, as well as part C of its Statement of Facts regarding the resentencing proceedings, are unusually argumentative, appellee cross-appellant Fumo offers this brief overview.

On the prior appeal of this case to this Court (the government's appeal of the sentence and Mr. Fumo's cross-appeal of the convictions and sentence), this Court affirmed Mr. Fumo's convictions, affirmed the restitution order, vacated the sentences and remanded for resentencing in light of its agree-

ment with the government that the district court had used an improperly low loss amount in its guidelines calculations and had failed to make clear whether the prison sentence was based on a "variance" or a "departure." United States v. Fumo, 655 F.3d 288 (3d Cir. 2011).

After the parties filed detailed memoranda, App. II, 71-72 (DDE 901-912), the district court (Buckwalter, J.) held a two-day resentencing hearing for Mr. Fumo on November 9 and 10, 2011, in which evidence was presented. App. II, 75-201. After hearing the evidence and parties' arguments and delivering a lengthy explanation for its rulings, the district court resentenced Mr. Fumo to a 61-month term of imprisonment (six months longer than the term imposed at the original sentencing), to be followed by three years' supervised release. App. II, 201. The court also added a special condition of supervised release, not included in the original sentence, that Mr. Fumo perform 500 hours of community service during his first year after imprisonment, at a rate of ten hours per week.[2]  Finally, the court

---

[2] The government speculates in its brief that the six-month increase in the sentence of imprisonment is attributable to Judge Buckwalter's reaction to a particular e-mail Mr. Fumo had sent while in prison, criticizing the jury that convicted him. U.S. 1st Step Br. 28. But the court below never expressly stated why it was increasing the term of imprisonment. See App. II, 201; cf. id. 192-93 (judge's comments on defendant's prison e-mails). It is at least as likely that the court increased the sentence to 61 months to reflect (yet somewhat exceed) the five-year term that the government had offered Mr. Fumo if he were to plead guilty before trial, a fact that appeared to bother the court, in relation to the government's much higher recommendation after trial, as much as did Mr. Fumo's ill-tempered e-mails. See App. II, 158.  (One prosecutor attempted to deny that

reimposed the same $411,000 in fines and $13,700 in special assessments.  Id.

Rejecting defense counsel's argument that the court lacked the authority to increase the restitution amounts in light of this Court's mandate, the district court imposed restitution on Mr. Fumo in favor of the Pennsylvania State Senate ($2,517,274, which is $1,103,455 more than originally imposed), the Independence Seaport Museum ($135,010, not increased), and Citizens Alliance for Better Neighborhoods ("Citizens Alliance") ($783,264, half of $1,566,528, increased by $773,726), totaling $3,435,550.  App. II, 201.  The total restitution imposed was thus $1,093,601 more than in 2009.  See 1FSA 6 (DDE 930, 11/28/11 judgment); DDE 744 (7/23/09 judgment).  In support of the amended sentence, Judge Buckwalter read from the bench a lengthy and detailed opinion (running over 46 transcript pages) explaining his reasoning for every aspect of the sentence and addressing nearly every argument advanced by either party.  App. II, 190-201.

_____(footnote continued)

there had been such an offer, App. II, 158-59, but after defense counsel flatly contradicted him and affirmed that it was true, and that in fact the offer had been for a five-year cap on the sentence, id. 168, the other prosecutor stood up to admit that defense counsel was "correct .... The government did make the five-year offer that he describes ...."  Id. 175.)  Appellant would suggest that it is at least as likely that the addition of 500 hours of community service to Mr. Fumo's sentence is the part that reflects the judge's reaction to the e-mail referring to the jury in an insulting way.  See App. II, 201 ("I think that's necessary to make sure that you are the type of person who helps the community, and that will be a special condition of your supervised release.").

The restitution imposed on account of the Citizens Alliance fraud represented half the total Guidelines "loss" amount; the other half was imposed on co-defendant Ruth Arnao.[3]  At the original sentencings, the full amount had been imposed jointly and severally.  App. II, 48 (DDE 748).  The district court based its decision to apportion the restitution on its determination that the codefendants were equally culpable for the Citizens Alliance fraud, that Ms. Arnao had the ability to pay half, and that the court wanted both defendants to shoulder this penal burden.  See App. II, 201 (Fumo resentencing), 218-19 (Arnao resentencing).  Had joint and several liability been imposed, the court recognized, Mr. Fumo would have wound up paying 100% and Arnao nothing.

The restitution included prejudgment interest figured on the entire loss amounts to the date of resentencing, see DDE 903 (Gov't Resent. Mem.), at 78-80 (government's calculation, later adopted by the court), even though Mr. Fumo had already paid $1 million toward that obligation at the time of the original sentencing, and then the full balance of the original judgment (another $1,755,383.33, including interest) nearly two years before the resentencing.  See 2FSA 67-69.  Since resentencing, the balance of the financial penalties as imposed in November

_____

[3] Arnao was resentenced on November 16, 2011.  App. II, 203-19.  She received the same prison term of one year and one day, supervision for three years, a fine of $45,000, and special assessments of $4500, as had been imposed in 2009. In addition, she was required to pay 50% of the restitution obligation to Citizens Alliance, which came to $783,264. App. II, 218-19 (imposition of sentence); 2FSA 46-48 (judgment).

2011 has been paid in full through enforcement of the govern-ment's lien.  DDE 943 (filed 4/11/12).[4]

An amended judgment reflecting the resentencing was signed on November 25, 2011, and was filed and entered on November 28, 2011.  1FSA 2; App. II, 73 (DDE 930).  The government filed a timely notice of appeal to this Court on December 16, 2011. DDE 933.  Mr. Fumo filed a timely notice of cross-appeal on December 29, 2011.  1FSA 1 (DDE 938).[5]

At trial, the jury did not determine any amount of loss from the offenses as to which restitution was ordered.

### b. Counter-Statement of Facts

Although Mr. Fumo disagrees with the sometimes hyperbolic and overly adjective-laced style of the Statement of Facts in the government's Step One brief (parts A and B, concerning underlying facts of case), to the extent that it may contain any substantive inaccuracies none seems to be material to the present appeal.  Since this Court's opinion in the prior appeal contains a detailed statement of the underlying facts of the case, Mr. Fumo refers this Court to its own recitation, rather

---

[4] The final payoff, in the amount of $1,095,109.65, occurred on April 6, 2012, while this appeal was pending.  No stay was sought or entered pending appeal, since any amount overcollected can readily be refunded.

[5] Co-defendant Ruth Arnao was resentenced on November 16, 2011.  2FSA 40 (DDE 922).  A judgment was entered on November 17, 2011 (2FSA 40 [DDE 923], 2FSA 44 [copy of Arnao judgment]), from which the government took an appeal.  2FSA 42 (DDE 934).  Ms. Arnao did not appeal, and the government later dismissed its appeal as to her.  2FSA 43 (DDE 944).

than adopting or disputing the government's.  United States v. Fumo, 655 F.3d at 288, 294-96.

SUMMARY OF ARGUMENT

On Cross-Appeal:  In its original appeal, the government challenged the district court's determination of the applicable Sentencing Guidelines range, including its calculation of the "loss" figure used to establish the Guidelines offense level. Nowhere in its brief did the government argue (that is, discuss and defend) its assertion if that the Guidelines "loss" calculations were overturned, then the restitution imposed at the initial sentencing would also have to be reversed.  On cross-appeal, Mr. Fumo did raise an issue about the restitution -- the district court's unprecedented and statutorily unauthorized addition of prejudgment interest to the restitution figures. This Court vacated the sentence on the government's appeal, while affirming the convictions on the defendant's cross-appeal. The opinion expressly affirmed the restitution order, 655 F.3d at 322, and otherwise remanded for resentencing.  Id. 324.  At the resentencing hearing, over objection based on the scope of the mandate, the district court nevertheless revisited the restitution and increased it in lockstep with the higher Guidelines "loss" figures.  This ruling resulted in a $1.1 million increase in the original restitution judgment, which Mr. Fumo had already fully paid by the time of resentencing.  The decision to increase the restitution, notwithstanding this Court's prior affirmance, was reversible error.

Despite this Court's ruling in the prior appeal, there is no statutory authority for the imposition of prejudgment interest on a judgment for restitution in a federal criminal case.  The amount of added prejudgment interest in this case was $255,860 in the original judgment, and is $366,279 in the amended judgment.  The defendant therefore respectfully preserves this issue for potential <u>en banc</u> or Supreme Court review by challenging the legality of $366,279 of the restitution that has been ordered.

In any event, Mr. Fumo notes that prejudgment interest was added up to the date of resentencing on the full (increased) amount of restitution, even though a large part of the restitution judgment had already been paid.  Obviously, interest accrues only on an unpaid obligation.  Although this mistake was unfortunately not noted at the time of the resentencing (or within 14 days thereafter, as could have been done under Fed.R.Crim.P. 35(a)), the error is plain.  At the least, this Court must vacate and remand the restitution for a recalculation that eliminates any interest on amounts paid, after those sums were paid.

Finally, because the jury was instructed -- in accordance with then-binding Circuit precedent -- that it need not find any "loss" in order to convict Mr. Fumo of the fraud schemes with which he was charged, the jury's verdict alone did not support the addition of restitution to the sentence, absent further judicial factfinding.  The restitution judgment in its entirety therefore violates the Fifth and Sixth Amendments as interpreted

-10-

in Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny, including in particular Southern Union Co. v. United States, 567 U.S. ---, 132 S.Ct. 2344 (June 21, 2012).  Because the merits panel hearing the instant appeal will nevertheless be bound by United States v. Leahy, 438 F.3d 328, 335-38 (3d Cir. 2006) (en banc), this issue is likewise raised to preserve it for poten- tial en banc or Supreme Court review.

On the Government's Appeal:  Judge Buckwalter did not abuse his discretion under 18 U.S.C. § 3664(h) when he ensured that Citizens Alliance was awarded full restitution, but then allo- cated that restitution on a 50/50 basis between the two defen- dants, Vincent Fumo and Ruth Arnao.  The government has not appealed the allocation of 50% to Ms. Arnao, but claims that the district court was obligated at the same time to impose 100% of the restitution amount (on a joint and several basis) against Mr. Fumo.  To support its position, the government does not identify any legal error, but only seeks to reargue its view of the facts.  By virtue of having dismissed its appeal of the Arnao judgment, the government cannot even claim -- and does not -- that the district court abused its discretion by choosing to apportion the restitution at resentencing rather than simply reimpose it, as it had originally done, on a fully joint and several basis.

Nothing in the statute, and no case law, requires the district court to divide the restitution in a multi-defendant case proportionally to the government's view of the defendants' relative levels of criminal responsibility, much less to each

defendant's "gain," or even to their present, respective abilities to pay.  What the statute requires is, first, that the sentencing court ensure that the defendants collectively are ordered to pay 100% of the victim's losses.  18 U.S.C. § 3664(f)(1)(A).  The court then has discretion whether to "apportion" the payment obligation among the various defendants, or on the other hand to make their payment obligations "joint and several."  <u>Id.</u>(h).

The purpose of apportionment, according to the statute, is to allow the co-defendants' respective judgments "to reflect the level of contribution to the victim's loss and [the] economic circumstances of each defendant."  <u>Id.</u>  The court below chose to apportion, and took these two statutory factors into account.  Its apportionment of the restitution was necessary in order to ensure that the co-defendant, Ms. Arnao, would personally bear some of the burden for making the restitution, and was thus part of a complex and careful sentencing package for each defendant, and for the two defendants in relation to one another.  The court gave record-based reasons, which are not clearly erroneous, for its discretionary judgment.  No reversal of the allocation of restitution can be legally justified simply because the prosecutors would have preferred to see the facts weighed differently.

## ARGUMENT FOR VINCENT FUMO AS CROSS-APPELLANT

**I.  THE DISTRICT COURT EXCEEDED THE SCOPE OF THIS COURT'S MANDATE BY REVISITING AND INCREASING THE RESTITUTION ASPECT OF MR. FUMO'S SENTENCE.**

Standard of review:  Plenary.  United States v. Miller, 594 F.3d 172, 178 n.3 (3d Cir. 2010).

Discussion:  On the initial appeal in this case, this Court affirmed the district court's restitution judgment.  The government had not challenged the restitution order; rather, Mr. Fumo had raised in his cross-appeal an issue concerning only the inclusion of prejudgment interest in restitution.  This Court vacated only the incarceration portion of the judgment, remanding for resentencing based on its determination that the district court had abused its discretion by omitting certain monetary amounts from its loss calculation and by declining to apply certain guidelines enhancements, which significantly affected the offense level and advisory imprisonment range under the sentencing guidelines.[6]  This Court's affirmance of the restitution order became part of its mandate, and the district court lacked the authority to revisit restitution on resentencing by increasing the amount.  Vacation of Mr. Fumo's judgment on resentencing and remand for reinstatement of the initial restitution amounts, subject to allocation between the co-defendants, is the necessary remedy.

---

[6] This Court also vacated the incarceration portion of the sentence because it could not determine from the sentencing record whether the district court had granted a downward variance or a departure.  See Fumo, 665 F.3d at 319.

The district court's decision to revisit the issue of the principal restitution amount at resentencing was unlawful, because it violated this Court's mandate in the first appeal. Ordinarily, a remand for resentencing imposes no restrictions on the scope of the matters the district court can consider, particularly with respect to new developments, in fashioning the sentence which, in its discretion, is "sufficient" and yet "no greater than necessary." 18 U.S.C. § 3553(a). See United States v. Salinas-Cortez, 660 F.3d 695, 698-99 (3d Cir. 2011), explaining Pepper v. United States, 562 U.S. ---, 131 S.Ct. 1229 (2011). But there is an important exception. Nothing in Salinas-Cortez (or Pepper) purports to overrule the longstanding doctrine that matters which were previously decided -- or were ripe for consideration -- on a prior appeal, become the law of the case with respect to both the proceedings on remand and in any subsequent appeal. See Miller, 594 F.3d at 178-80, discussing United States v. Pultrone, 241 F.3d 306, 307-08 (3d Cir. 2001) (defendant's voluntary withdrawal of cross-appeal when government initially appealed sentence precludes defendant's later attempt to appeal conviction after resentencing).[7]

The amount of restitution imposed in 2009 -- a total of $2,340,839.46 -- was not made an issue by the government on appeal to this Court, and on the defendant's cross-appeal was upheld. It was therefore outside the scope of the remand. Yet

---

[7] An argument which was not available at an earlier stage of litigation, on the other hand, cannot have been "waived" or "abandoned" before it even arose.

at the resentencing, the restitution amount was increased to
$3,435,548.00 -- a difference of $1,094,709.  This increase in
the restitution amount was unlawful and should be reversed.

The parties disputed in the first appeal itself whether the
principal amounts of restitution owing to Citizens Alliance and
to the State Senate had been effectively made an issue on the
government's appeal.[8]  In its present appeal brief, the govern-
ment anticipates Mr. Fumo's argument that the point was waived
in the prior appeal by stating that its brief in the prior
appeal had "repeatedly advised this Court that correction of the
loss total must also result in a new order of restitution.  For
example, [increased restitution on remand was sought in the
brief's conclusion]."  1st Step. Br. 31.  This is quite an
exaggeration; a party obtains relief on appeal not by "advising"
this Court of what "must" result, but by advancing a legal
argument for that relief.

No appellate challenge to the district court's restitution
order appeared in the government's Statement of Issues in its
219-page opening brief in the initial appeal, see Fed.R.App.P.
28(a)(5), nor in any Argument heading.  See 2FSA 51-55.  The
question of restitution was advanced in that brief only as a
tag-along comment in the government's argument disputing the
Guidelines "loss" calculation.  Thus, in the second paragraph of

---

[8] No issue as to the determination of "loss" suffered by the
Independence Seaport Museum was raised in the prior appeal,
and no change in that figure was made on remand, either
under the Guidelines or as to restitution (except for an
increase in the prejudgment interest, which like all
prejudgment interest in the case, is disputed).

-15-

discussion under the argument heading, "The Court Committed
Clear Error in its Calculation of the Loss Caused by Fumo's
Fraud on the Senate," the government asserted (referring,
curiously, to both the Senate and Citizens Alliance losses):

> The district court's guidelines rulings lowered the
> offense level for both Fumo and Arnao, and reduced
> their restitution obligation as well. [fn29] Thus,
> through this appeal, the government seeks reversal of
> the restitution orders along with the other parts of
> the judgment.

2FSA 56 (pertinent excerpts of govt's brief).  There is no
further discussion.  The government's brief never cited
mentioned the restitution statute, never cited a case, and
offered no rationale as to why, in this case, the restitution
would be so tightly tied to the Guidelines "loss."

Under the heading, "The Court Committed Clear Error in its
Calculation of the Loss Caused by the Fraud on Citizens
Alliance," there is no mention of restitution at all.  <u>See</u> 2FSA
58-62.  The conclusion of the government's "loss" argument
repeats the one-sentence, conclusory claim made nearly 70 pages
earlier:

> In combination, the errors resulted in guideline
> ranges for each defendant which were markedly below
> the correct ranges.  In addition, the erroneous loss
> calculations resulted in an order for restitution
> that was approximately $2 million less than it should
> have been.  Remand for resentencing is therefore
> required.

2FSA 63.  <u>See also</u> 2FSA 65 (final prayer for relief).

Despite submitting more than 420 pages of briefing to this
Court in that original appeal, the government thus devoted only
a conclusory sentence (thrice repeated), devoid of substantive

-16-

legal argument, to the merits of the restitution order.  Fumo
argued that this was insufficient to preserve the issue for
appeal.  2d Step Br. at 28 n.8 (noting omission of Statement of
Issues and failure to support contention with argument).  <u>See</u>
Fed.R.App.P. 28.1(a)(1); 3d Cir. LAR 28.1(a)(1).  The general
rule is well settled:  "an issue is waived unless a party raises
it in its opening brief, and for these purposes a passing refer-
ence to an issue will not suffice ...."  <u>United States v.
Stadtmauer</u>, 620 F.3d 238, 264 n.31 (3d Cir. 2010) (quoting
<u>Skretvedt v. E.I. DuPont de Nemours</u>, 372 F.3d 193, 202-03 (3d
Cir. 2004)) (omitting internal quotation marks and citation).
Compare <u>United States v. Albertson</u>, 645 F.3d 191, 194-96 & n.3
(3d Cir. 2011) (in "extraordinary circumstances" Court may
address an issue not advanced in opening brief)[9]; <u>United States
v. Negroni</u>, 638 F.3d 434, 444 n.9 (3d Cir. 2011) (no waiver of
procedural reasonableness issue found in sentencing appeal where

---

[9] In <u>Albertson</u>, this Court reversed the imposition of an
unlawful supervised release condition, even though the
defendant-appellant had not challenged it until filing his
Reply Brief on appeal.  This Court found "extraordinary
circumstances" to justify addressing the issue, because the
precedent on which appellant principally relied was not
announced until the day after he filed his opening brief (a
factor to which the Court gave little weight), because the
government, as opposing party, would suffer no prejudice,
and because the government had not pressed a waiver argument
in the sur-reply that it was allowed to file.  Here, this
Court's precedent requiring an issue to be briefed, not just
raised in passing, was well established; Mr. Fumo immedi-
ately took the position (in his second-step brief) that any
restitution increase had been waived by the failure to brief
it, but in its third-step brief the government merely
reiterated its assertion, without including any briefing of
the point; and he is severely prejudiced by having to pay an
additional million dollars in restitution.

much of government's argument concerned procedural as well as substantive reasonableness, although former not expressly included in statement of issues).

Guidelines "loss" and restitution are not cognate concepts, so the briefing of one cannot automatically constitute an appeal of the other. "Relevant conduct" as defined in USSG § 1B1.3 can serve either to limit or to expand the Guidelines "loss" calculation, for example, while only actual loss due to the offense of conviction is ordinarily included in restitution. 18 U.S.C. § 3663(a); Hughey v. United States, 495 U.S. 411 (1990); United States v. Akande, 200 F.3d 136, 143 (3d Cir. 1999); United States v. Badaracco, 954 F.2d 928, 942-43 (3d Cir. 1992). Moreover, the Guidelines calculation can reflect "intended loss," USSG § 2B1.1, appl. note 3(A) (p.s.), while restitution does not. Guidelines "loss" may rest on a reasonable estimate, id. note 3(C), while restitution requires a more precise calculation and can be foregone due to "undue complication and delay" or if "impracticable." See 18 U.S.C. § 3663A(c)(iii).[10]

_____

[10] An example where this sort of difference could arise on the facts of Mr. Fumo's case was mentioned by Judge Buckwalter in his resentencing opinion, as delivered from the bench. In the course of discussing why the Guidelines level under USSG § 2B1.1 greatly overstated the severity of the offense, the judge explained:

> For example, part of the [Guidelines] loss includes work performed by [S]enate-paid employee Gerald Sabol[,] who testified that he voluntarily helped Mr. Fumo in tasks realted to Mr. Fumo's farm .... Sabol testified that he averaged between fifty to sixty hours per week doing [S]enate-related work over the court his almost two decades working for Mr. Fumo. Likewise, [S]enate-paid employee Don Wilson indicated that he performed personal tasks for Mr. Fumo as

And Guidelines "loss" disregards post-disclosure repayments, USSG § 2B1.1, appl. note 3(E)(i) (p.s.), while restitution must be reduced by all pre-sentencing repayments, whenever made. Finally, the rules on inclusion and exclusion of lost interest differ between the two. See United States v. Jimenez, 513 F.3d 62, 87 (3d Cir. 2008); United States v. Morgan, 376 F.3d 1002, 1014 (3d Cir. 2004). In short, a casual mention of restitution in an appeal brief that focuses on Guidelines "loss" cannot and does not preserve the former issue, because the two are not necessarily the same.

In its 204-page Third-Step brief, in response to Mr. Fumo's objection that the restitution issue had not been adequately briefed to be presented for decision, the government did not defend or justify its failure to brief the restitution claim, but merely reiterated the same assertions. See id. at 201 n.84, 204 (prayer for relief). This Court sided with Fumo when, in its lengthy precedential decision, it made no mention of resti-tution at all in the course of reversing the Guidelines offense level "loss" determinations, and did not reserve the "loss" amount question when it expressly "affirmed" the restitution.

_____(footnote continued)

    little as one day a month on average, while spending the rest of his time on [S]enate-related tasks. [¶]Those calculations provided to the government an attributable loss of almost 50,000 dollars .... The fact that these individuals continued their [S]enate-related work while simultaneously performing personal tasks for Mr. Fumo[] makes it difficult to discern the precise loss to the [S]enate or taxpayers.

App. II, 197-98. Such abstract and theoretical "losses" may count under the Guidelines (from which a judge may then vary), but not necessarily for purposes of restitution (from which the judge cannot vary).

-19-

United States v. Fumo, 655 F.3d 288, 322 (3d Cir. 2011).  This
Court's opinion in the prior appeal limited its substantive
discussion of restitution to the narrow issue of prejudgment
interest; it never mentioned the government's assertion that the
restitution must be increased if the Guidelines "loss" amount
were raised.  See id. 319-22.  Instead, in the face of this
explicit dispute, it proceeded expressly to affirm the order in
toto.  Id. at 322 ("We will therefore affirm the order of
restitution, including prejudgment interest.").  Necessarily,
the panel must have concluded that the government had not
sufficiently preserved any challenge it might have had to the
restitution amounts; after all, no other issue either party
pursued in that complex appeal went unmentioned in the decision.
The government did not seek rehearing or even clarification on
the question of what the prior panel meant when it said that the
restitution order was "affirmed."

    In light of that explicit affirmance of the district
court's original order of restitution, the generalized vacatur
of the "sentence" that followed, id. 324 ("For the foregoing
reasons, we ... vacate the sentences of both Fumo and Arnao, and
remand for further proceedings not inconsistent with this
opinion."), cannot be read to undercut the plain force and
intention of this Court's stated holding affirming the restitu-
tion.  This is especially so when one considers that panels of
this Court routinely make explicit any instructions to revisit

restitution on remand.[11]  Certainly, this Court would have had discretion to vacate and remand the restitution, simply on the basis that the two calculations might be interdependent, but if it were doing so, given the clear dispute between the parties over the matter, the opinion would be expected to do so expressly.  See, e.g., United States v. Leahy, 445 F.3d 634, 638 (3d Cir. 2006) ("Because the forfeiture and restitution orders are inextricably intertwined with the District Court's loss findings under the Guidelines, we will vacate and remand those orders as well.").

At resentencing, the district court was required to fully implement this Court's opinion and mandate.  But under the law of the case doctrine, resentencing also had to proceed on terms consistent with the original sentencing to the extent it was unaffected by the opinion and mandate.  The Supreme Court in Pepper reiterated the importance of that doctrine: "[W]hen a court decides upon a rule of law, that decision should continue

_____

[11] See, e.g., United States v. Fallon, 470 F.3d 542, 550 (3d Cir. 2006) ("[W]e will affirm Fallon's judgment of conviction and sentence and vacate the District Court's restitution order"); United States v. Feldman, 338 F.3d 212, 224 (3d Cir. 2003) ("[W]e will affirm the judgment of the District Court as to the sentence imposed, but we will vacate the judgment insofar as it contains the restitution award"); United States v. Holmes, 193 F.3d 200, 206 (3d Cir. 1999) ("[W]e will affirm the judgment of conviction and the portion of the sentence that sets the term of imprisonment. We will vacate so much of the sentence as imposes the order of restitution."); United States v. Cottman, 142 F.3d 160, 162 (3d Cir. 1998) ("[W]e will vacate that portion of the judgment of sentence, imposing restitution, and we will remand this case for resentencing."); United States v. Gaydos, 108 F.3d 505, 512 (3d Cir. 1997) ("[W]e will ... vacate her sentence and restitution order, and remand the cause to the district court").

to govern the same issues in subsequent stages in the same
case." 131 S.Ct. at 1250 (quoting Arizona v. California, 460
U.S. 605, 618 (1983)).

Where, as here, this Court instructs the district court to
proceed in accordance with its opinion, see Fumo, 655 F.3d at
324, the entire opinion becomes "part of the mandate as
completely as though [it] had been set out at length." Bankers
Trust Co. v. Bethlehem Steel Corp., 761 F.2d 943, 949 (3d Cir.
1985). Hence, in this case, "[t]he mandate and the opinion must
be considered together in their entirety with particular
reference to the issues considered." Id. 950. The district
court then had an obligation to endeavor to "implement the
letter and spirit of the mandate, taking into account the appel-
late court's opinion and the circumstances it embraces." United
States v. Kikumura, 947 F.2d 72, 76 (3d Cir. 1991) (quoting
Bankers Trust Co., 761 F.2d at 949). By changing its initial
restitution judgment, which had been "affirmed," the district
court violated this Court's explicit mandate. See Seese v.
Volkswagenwerk, A.G., 679 F.2d 336, 337 (3d Cir. 1982) (per
curiam) ("The district court is without jurisdiction to alter
the mandate of this court on the basis of matters included or
includable in defendant's prior appeal."); see also Skretvedt,
372 F.3d at 203; United States v. Copple, 24 F.3d 535, 549 n.22
(3d Cir. 1994) ("On remand, a district court can consider
matters not explicitly or implicitly part of the decision in the
appellate court"); Habecker v. Clark Equipment Co., 942 F.2d

210, 218 (3d Cir. 1991) ("a mandate is controlling as to matters within its compass").

Since the government did not challenge the restitution judgment by briefing the matter on the initial appeal, and this Court affirmed the district court's judgment on restitution, that part of the judgment was not open to revision on resentencing, regardless of whether the restitution should have been vacated and remanded had the matter been properly appealed. "'If an appeal is taken from only part of the judgment, the remaining part is res judicata, and the vacation of the portion appealed from and remand of the case for further proceedings does not revive the trial court jurisdiction of the unappealed portion of the judgment.'" Laborers' Int'l Union v. Foster Wheeler Corp., 26 F.3d 375, 396 n.24 (3d Cir. 1994) (per Becker, J., quoting *Moore's Federal Practice*). The district court allowed the government to use remand on different issues to revive a challenge to restitution which it forfeited on appeal. This is prohibited. Kikumura, 947 F.2d at 77.

In its sentencing opinion, delivered orally from the bench, the district court addressed at length its decision to reopen the issue of restitution. In doing so, it reviewed the manner in which the restitution had been mentioned in the government's brief, and concluded that this Court meant to affirm only as to "Mr. Fumo's argument as to the award of pre-interest judgment (sic) on the restitution amount. Although the Third Circuit affirmed the order of restitution, it did so only to the extent it was rejecting Mr. Fumo's objection to it." This Court's

review of that reading of its own opinion, of course, would be
de novo.

The court below cited the Supreme Court's decision in
Pepper as suggesting that a prior "reversal of a sentence effec-
tively wiped the slate clean." App. II, 200. The Supreme Court
in Pepper, Judge Buckwalter noted:

> recognized that a criminal sentence is a package of
> sanctions that the district court utilizes to effec-
> tuate its sentencing intent. Because district
> courts' original sentencing can be turned [sic] by
> altering one position in the calculus, an appellate
> court in reversing one part of defendant's sentence
> may vacate the entire sentence, so that on remand,
> the trial court can reconfigure the sentencing plan
> to satisfy the sentencing.

App. II, 200. It is certainly true that an appellate court,
under the "sentencing package" doctrine, "may" vacate and remand
more of the sentence than has been directly found to be erron-
eous.[12] But it does not follow that the Court does so sub
silentio in each and every case, particularly where the issue is
not the assembling of consecutive or concurrent terms (the
typical "sentencing package" problem), and the matter to be
raised on remand does not involve new information, as with the
"post-sentence rehabilitation" raised in Pepper. The government
likewise misuses the Pepper decision, citing a passage about
general remands for resentencing, see U.S. 1st Step Br. at 32,
quoting 131 S.Ct. at 1250, while ignoring that in Pepper -- as
stated on the very same page the government cites -- the defen-

_____

12 See Miller, 594 F.3d at 180-82; United States v. Murray,
144 F.3d 270, 272-75 (3d Cir. 1998); see also Greenlaw v.
United States, 554 U.S. 237, 253-54 & n.8 (2008).

dant "abandoned any argument that the mandate itself restricted the District Court from imposing" (id.) the challenged change in the sentence.

Similarly, Judge Buckwalter looked to this Court's interpretation of Pepper in Salinas-Cortez (referenced by date of decision, rather than by name), App. II, 200,[13] that "a limitation precluding consideration of new factors must clearly appear on the face of the opinion or the judgment vacating the original sentence and remanding for resentence." At issue in Salinas-Cortez was the authority at a resentencing to consider evidence of post-sentence rehabilitation. Again, Mr. Fumo would not and does not disagree. Here, by contrast, the restitution amount was an old issue, not a new one. The government's failure to brief it in the first appeal, when the matter was already ripe for consideration, therefore blocked its further consideration. Pultrone, 241 F.3d at 307-08.

The government in its oral presentation below and now in its brief makes one final argument, which Judge Buckwalter did not adopt in his detailed bench opinion,[14] that our argument

———————————————

[13] According to the transcript, Judge Buckwalter said, "On November 8, 2008 [sic], the Third Circuit determined Pepper to recognize [that] district courts should not infer any limitation on resentencing when a case is remanded." App. II, 200. Salinas-Cortez, decided on November 8, 2011, less than a week prior to Mr. Fumo's resentencing, makes the point Judge Buckwalter mentioned.

[14] The government's brief mistakenly asserts that "[t]he district court agreed with all of the government's arguments in rebuttal to the defense claim" that the mandate barred any increase in the restitution amounts. U.S. 1st Step Br. at 32. Not so, as to the "illegality" argument.

amounts to a contention "that the Third Circuit had ordered the district court to impose an illegal judgment, which fails to restore to the victims all that was taken from them. No appellate mandate ... should be read to produce such a bizarre result." U.S. 1st Step Br. at 32. In fact, the Supreme Court has emphatically held exactly the opposite of what the government asserts. See Greenlaw v. United States, 554 U.S. 237, 243 (2008) (holding that government waives illegal sentence error [there, failure to impose a mandatory minimum] by not appealing when it can, making sentence final and enforceable even if contrary to statute).

For all these reasons, unless greater relief is awarded on account of the issues presented under Points II.A. and III of Mr. Fumo's instant cross-appeal, the amended judgment must be remanded for reinstatement of the initial restitution amounts, other than to the extent that the Citizens Alliance restitution was permissibly allocated between co-defendants at the resentencing under 18 U.S.C. § 3664(h),[15] as discussed in the government's opening brief and in the Appellee portion of this brief.

---

[15] The mandate did not bar alteration of the restitution to the extent of apportioning it, on the other hand, because the discretionary imposition of joint and several liability at the original sentence was not something Mr. Fumo could reasonably have claimed as error in his initial cross-appeal. Even if he had advanced the point, and this Court had affirmed on the basis that there was no abuse of discretion, that ruling would not have been binding on remand. See Pepper, 131 S.Ct. at 1250 n.18 (appellate affirmance of an exercise of sentencing discretion does not require replication of the same discretionary judgment on resentencing).

**II.  THE DISTRICT COURT ERRED BY IMPOSING PREJUDGMENT INTEREST ON THE RESTITUTION JUDGMENT.**

<u>Standard or Scope of Review</u>:  A defendant's challenge to the legality of any aspect of the sentence is subject to plenary review within an overall context of abuse-of-discretion review for procedural reasonableness.  Legal error renders a sentence unreasonable and constitutes a <u>per se</u> abuse of discretion.  See <u>Koon v. United States</u>, 518 U.S. 81, 100 (1996); <u>Fumo</u>, 655 F.3d at 308; <u>United States v. Wise</u>, 515 F.3d 207, 217 (3d Cir. 2008).  Sentencing errors not raised below, however, are reviewed for plain error under Fed.R.Crim.P. 52(b).  See <u>United States v. Cotton</u>, 535 U.S. 625 (2002); <u>United States v. Adams</u>, 252 F.3d 276 (3d Cir. 2001) (discussing plain error occurring at sentencing).

<u>Discussion</u>:

In two different ways, the district court erred in its imposition of prejudgment interest on the restitution component of the judgment in this case.

**A.  The Defendant Preserves his Challenge to the Imposition <u>of Any Prejudgment Interest on Criminal Restitution.</u>**

There is no statutory authority for the imposition of prejudgment interest on a judgment for restitution in a federal criminal case.  Nevertheless, this Court ruled in the prior appeal that such interest could lawfully be added.  <u>Fumo</u>, 655 F.3d at 319-21.  The amount of added prejudgment interest in this case was $255,860 in the original judgment, and totals $366,279 in the amended judgment.  Understanding that the

present panel is bound at this time by the prior decision, the defendant respectfully preserves this issue for potential <u>en banc</u> or Supreme Court review by challenging the legality of $366,279 of the restitution that has been ordered.

> B. "Prejudgment" Interest to the Date of the Resentencing Was Illogically Added to Amounts of Restitution that Mr. Fumo Had Already Paid Following the First Sentencing.

On or before July 14, 2009, defendant/cross-appellant Vincent Fumo paid the $13,700 in special assessments imposed on him in the original sentencing held that day, plus $1 million toward the restitution, which in the original judgment totaled $2,340,839.46 (including $255,860 in prejudgment interest). On December 29, 2009, while the original cross-appeals were pending and almost two years prior to the resentencing, he paid in full the $1,340,789 balance of the restitution, as well as the $411,000 in fines which remained due under the judgment entered against him by Judge Buckwalter on July 23, 2009. 2FSA 69 (clerk's office receipt for payment).[16] The restitution amount included payment in full of the $792,802 in joint and several liability to Citizens Alliance, as imposed at the original

---

[16] The total amount of the December 2009 payment was $1,755,383.33, of which about $3600 represented <u>post</u>-judgment interest. 2FSA 68-69 (U.S. Attorney's Office payoff letter; Clerk's Office receipt). The addition of post-judgment interest for the period from July 2009 to December of that year is not in dispute; however, if the government and the district court are correct that the restitution judgment was later properly vacated and remanded on the government's first appeal, then the "post-judgment" period became part of the "prejudgment" period prior to resentencing, which significantly changes the applicable interest rate (in the defendant's favor) and otherwise affects the corrected calculation.

sentencing.  At the resentencing, as discussed (and disputed) under Point I above, the district court increased the restitution amounts due to the State Senate and to Citizens Alliance (and then apportioned the new Citizens Alliance figure to reflect a 50/50 allocation).[17]  Yet in entering its amended judgment, the district court (at the government's behest) added prejudgment interest on the full increased amounts, running from the end dates of the offenses to the date of resentencing ($366,279 in interest out of a total $3,435,548 in restitution ordered at resentencing).  As a result, a substantial sum of interest -- undersigned counsel estimates the mistaken amount at about $11,500[18] -- was charged on the portions of the obligation that had already been paid.

Obviously, interest accrues, if at all, only on an <u>unpaid</u> obligation.  The district court therefore erred, even if prejudgment interest on restitution is lawful, by adding additional interest as if none of the restitution had been paid prior to the resentencing, even though in fact all but the last $1 million had been.  This mistake was unfortunately not noted at the time of the resentencing (or within 14 days thereafter, as could have been done under Fed.R.Crim.P. 35(a)).  Never-

---

[17] The restitution due to Independence Seaport Museum remained the same; that calculation had not been challenged.

[18] In light of the two payments on different dates, the precise, correct calculation (assuming prejudgment interest is legally valid at all) is quite complex.  Mr. Fumo does not suggest that this Court attempt to determine the precise figure, but only that it recognize the logical and legal validity of the issue and remand with instructions that it be resolved.

theless, the error is plain, in that it is obvious upon examination of the record, and affects the defendant's substantial rights to be free from baseless financial penalties. Failure to correct it would cause a miscarriage of justice by exacting money on the basis of a careless oversight, without basis in law. See United States v. Fullmer, 584 F.3d 132, 165 (3d Cir. 2009) (violation of MVRA in imposition of restitution is plain error, requiring remand). At the least, this Court must vacate and remand the restitution for a recalculation that eliminates any interest on amounts paid, after those sums were paid.

**III.  THE IMPOSITION OF RESTITUTION IN THIS CASE VIOLATED THE FIFTH AND SIXTH AMENDMENTS AS INTERPRETED BY THE SUPREME COURT.**

The jury was instructed at trial -- in accordance with settled Circuit precedent -- that it need not find any "loss" in order to convict Mr. Fumo of the fraud schemes with which he was charged. As a result, its verdict alone did not support the addition of restitution to the sentence, absent further judicial factfinding. The restitution judgment in its entirety therefore violates the Fifth and Sixth Amendments as interpreted in Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny. In particular, the Supreme Court held recently in Southern Union Co. v. United States, 567 U.S. ---, 132 S.Ct. 2344 (June 21, 2012), that an increase in the maximum fine based on judicial factfinding rather than on the facts necessarily determined by the verdict alone was unconstitutional. However, in United States v. Leahy, 438 F.3d 328, 335-38 (3d Cir. 2006) (en banc),

a majority of this Court[19] held that the _Apprendi_ principle does not apply to criminal restitution orders.  Because the merits panel hearing the instant appeal will be bound by _Leahy_, this issue is raised -- like the issue presented under Point II.A. -- to preserve it for potential _en banc_ or Supreme Court review.

### ARGUMENT FOR VINCENT FUMO AS APPELLEE

**THE DISTRICT COURT ACTED WITHIN ITS DISCRETION WHEN, UPON CONSIDERATION OF THE STATUTORY FACTORS, IT ALLOCATED THE RESTITUTION OWING TO CITIZENS ALLIANCE ON A 50/50 BASIS BETWEEN THE TWO DEFENDANTS, ENSURING BOTH THAT THE VICTIM HAD THE BENEFIT OF 100% RESTITUTION AND THAT EACH DEFENDANT WOULD BE COMPELLED TO CONTRIBUTE TO THAT PAYMENT.**

_Standard of Review_:  Abuse of discretion.

_Discussion_:  At resentencing, the district court complied with this Court's mandate in the original appeal by increasing its calculation of the "loss" attributable to the counts charging a fraud scheme affecting Citizens Alliance.  The court then used that same higher number to increase the amount of restitution it deemed to be due for the benefit of Citizens Alliance.[20]  Of this higher total obligation, the court imposed an obligation to pay 50% on Mr. Fumo, and the other 50% on his co-defendant, Ruth Arnao.  At the initial sentencing in 2009,

_____

[19] The vote was 7-5.  Judge McKee, joined by Judges Rendell, Ambro, Smith and Becker, dissented.  438 F.3d at 339-48. The position the dissenters took is correct and consistent with the later Supreme Court decision in _Southern Union_. Likewise, the doubts expressed by Judges Fisher and Barry were well founded.  _Id._ at 339.

[20] _But see_ Pt. I of this brief, arguing that increasing the restitution amount at resentencing violated this Court's mandate.

the court had ordered each defendant to pay the full amount,
subject to joint and several liability.  To the extent that the
restitution is not otherwise overturned, the revised 50/50
allocation must be affirmed.

On the first day of the two-day Fumo resentencing, the
court noted that it considered the question of whether to impose
joint and several or 50/50 apportioned restitution for the
Citizens Alliance fraud to be "a relatively small matter in the
whole scheme of this thing," in that "I'm going to award full
restitution to Citizens' Alliance."  Appx. II, 150.  After the
court imposed sentence on Fumo on the second day of resenten-
cing, the government objected to the 50/50, non-joint and
several, apportionment of liability for restitution.  In
response, Judge Buckwalter stated the basis for his decision:

> Thank you for your remarks.  I really totally
> disagree with you.  Because I think the area [sic] of
> culpability here is equal.  Now, I take a different
> view with regard to the role of Ms. Arnao than you
> do.  And only Mr. Fumo and Ms. Arnao know for sure,
> but I take a different view than you do.
>
> I also think she has the ability to pay and should.
> But your objections are noted.

App. II, 201.[21]  The district court acted well within its
discretion in ordering Fumo to pay 50% of the restitution to
Citizens Alliance while requiring codefendant Arnao to pay the
other half separately.  Its decision should not be overturned.

---

[21] The district court did not amplify this explanation in
its sealed Statement of Reasons (submitted to this Court
with the government's opening brief, see SOR ¶VII.D., at 4,
nor was it required to do so.

-32-

First, exactly what is and is not at issue in the government's present appeal must be pinpointed.  The government has dismissed its appeal of <u>Arnao's</u> resentencing judgment.  As a result of that action the district court's allocation <u>to Arnao</u> of 50% of the restitution obligation to Citizens Alliance is final and cannot be changed, regardless of the outcome of the instant appeal.  Moreover the government expressly concedes that the decision as to Ms. Arnao was proper and not an abuse of discretion.  US 1st Step Br. 72 n.23.[22]  In making that concession, the government also necessarily has conceded that the district court did not abuse its discretion in its consideration of Arnao's level of contribution to the offense, and in its assessment of her economic circumstances, the statutory factors.  <u>See</u> 18 U.S.C. § 3664(h).  In other words, neither Arnao's contribution to the offense, nor her ability to pay, is properly at issue here.  The only issue before this Court is whether, given the determination to have Arnao pay 50%, Judge Buckwalter abused his discretion in assessing the other 50% -- rather than an overlapping 100% liability -- on Mr. Fumo.

The district court did not abuse its discretion in this regard.  The Mandatory Victim Restitution Act (MVRA) provides:

> In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant.

---

[22] In fact, the government also states that the district court would have acted within its discretion had it imposed the full amount of the restitution obligation on Arnao, even if it had found her to have been less culpable that Fumo. <u>Id.</u>

18 U.S.C. § 3664(f)(1)(A).  Where there is only one defendant, this right of the victim to full restitution (see also id. § 3771(a)(6) (Victims Rights Act)) must be implemented in the sentencing judgment without regard to the defendant's ability to pay, and even if the resulting obligation is disproportionate to the defendant's culpability or personal gain.[23]

In a multi-defendant case, however, the statute gives the district court more flexibility, so long as it accomplishes its duty to order 100% restitution to each victim.  Thus, the MVRA also provides:

> If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the reflect the level of contribution to the victim's loss and economic circumstances of each defendant.

Id. § 3664(h).  Moreover, Congress has directed that the restitution decision must be made in accordance with the directives of § 3664 whenever "imposing a sentence."  Id. § 3556.  Accordingly, in fashioning its sentence for each defendant, the court must "consider ... the need to provide restitution to any victims of the offense."  Id. § 3553(a)(7).  Thus, under the statutory scheme, the district court in a multi-defendant case (or perhaps, when sentencing on one of a group of related cases) must make a more complex decision, which involves carrying out

---

[23] This problem can arise, for example, where the more culpable individual perpetrator(s) is/are fugitives, have died, have made a deal with the government, or for some other reason cannot be, or simply are not, prosecuted.

two different duties simultaneously: to ensure full restitution under § 3664(f) and also to exercise its sentencing discretion under § 3553(a), including subsection (a)(7), by designing a "sentencing package" that imposes punishment "sufficient, but not greater than necessary" to achieve the purposes of the criminal justice system.[24]

The terms of § 3664(h) invite the judge to carry out this challenging responsibility through a series of stepwise decisions. That is, the court must:

- make a finding whether "more than 1 defendant has contributed to the loss of a victim"; and if so, then
  - •• choose whether to impose joint and several liability "for payment of the entire amount," or, on the other hand
  - •• choose to "apportion liability among the defendants."

The statute goes on to suggest that the district court may choose the option of apportionment if one of its objectives in the sentencing of the co-defendants is "to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." (The statute does <u>not</u> say that the court <u>must</u> always strive to enter restitution orders that reflect these considerations in a multi-defendant case, or that the decision <u>whether</u> to apportion restitution must be made with those factors in mind.) If the court does opt for apportionment of a restitu-

_____

[24] In addressing a different issue as part of the Fumo sentencing, Judge Buckwalter specifically noted that the restitution decision was part of "the calculus" that goes into "[]configur[ing]" an overall "sentencing plan." App. II, 200. In that calculus, however, he also considered the indirect but serious effects of Mr. Fumo's convictions, including the complete loss of an extremely valuable pension he had earned through a lifetime of productive work in public service. <u>Id.</u> 201.

tion amount, then the allocation should reflect a reasonable exercise of discretion in the balancing of those two factors, that is, the defendants' respective contributions to the loss and their individual economic circumstances.  The 50/50 allocation of the Citizens Alliance restitution in the sentence that Judge Buckwalter designed for Mr. Fumo demonstrates that the court complied with these statutory directives and did not abuse its discretion in doing so.

The two 50% shares total a 100% restitution award to the victim (Citizens Alliance), as required by the MVRA.  Given the now-final and concededly proper allocation of 50% liability for the Citizens Alliance restitution to co-defendant Arnao, and Judge Buckwalter's objective in sentencing Ms. Arnao to ensure that she actually bear some financial responsibility for her role in the offense, it cannot be said under these statutes that the district court abused its discretion in deciding not to impose the full amount on Fumo.  If joint and several liability had been imposed again, as it was at the original sentencing (see App. II, 48 [DDE 748]), then all the the money would have been collected from Mr. Fumo and none paid by Ms. Arnao, as Judge Buckwalter well understood.  In this light alone, the district court's judgment ordering Fumo to pay $783,264.00, which is 50% of the restitution obligation to Citizens Alliance ($1,566,128), as part of the much larger sentencing "package" that it did impose on him, did not constitute an abuse of discretion.

-36-

The government's brief advances two reasons for its sugges-
tion that the district court abused its discretion in not
imposing the full amount of restitution on Fumo for the Citizens
Alliance fraud.  The government claims that (1) Arnao's "culpa-
bility" for the Citizens Alliance fraud was less than Fumo's,
because she was simply following his orders and gained much less
than he did from the fraud, and (2) her ability to pay is much
less than Fumo's, and is in fact so low, if only her individual
assets and income are taken into account, that she will be able
to make no more than "minimal" payments.  U.S. 1st Step Br. 70.
As a result, the government theorizes, Citizens Alliance will
not be fully reimbursed for a long time, contrary to the purpose
of the MVRA.

The government's reasoning on both factors is wrong.  Not
only are several of its arguments inconsistent with points it
conceded in dismissing its appeal from Arnao's judgment, but the
record also amply establishes that the district court's findings
are far from clearly erroneous.  The record fully supports Judge
Buckwalter's findings of Arnao's substantial contribution to the
Citizens Alliance fraud offense and resultant losses, as well as
his finding of economic circumstances that sufficiently allow
payment by her of the restitution ordered.

Neither "equal" culpability nor "equal" ability to pay is
required by the statute to support a 50/50 apportionment, nor
does the government cite any case supporting that interpreta-
tion.  Rather, a case cited by the government (under the earlier
Victim Witness Protection Act) supports the district court's

discretion to impose 50/50 restitution despite less-than-equal culpability.  In United States v. Hand, 863 F.2d 1100, 1106 (3d Cir. 1988), this Court held that the imposition of full restitution on only one of two equally culpable co-defendants was not an abuse of discretion or a violation of due process.  Citing Hand, this Court later ruled that "joint and several liability" need not "necessarily ... mirror the precise culpability of each co-defendant when imposing restitution."  United States v. Hunter, 52 F.3d 489, 495 (3d Cir. 1995) (reversing and remanding for evidentiary hearing and factfinding).

The district court's assessment of the defendants' "level of contribution to the victim's loss" was not unreasonable.  The government's brief repeatedly argues that Arnao was far less culpable than Fumo in the Citizens Alliance fraud, because she was only following Fumo's orders, and was the Executive Director of Citizens Alliance in name only.  "The evidence was unambiguous and indisputable that Fumo initiated and directed the fraud ... and that Arnao was an underling who unhesitatingly carried out Fumo's orders," say the prosecutors in their brief.  U.S. 1st Step Br. 41-42.  Likewise, "Fumo installed Ruth Arnao, his Senate aide, as the nominal director of Citizens Alliance."  Id. 21-22.  "She was appropriately prosecuted for following Fumo's illegal orders and taking some of the stolen proceeds for herself."  Id. 60-61.  At Arnao's resentencing, however, the

government took a different stance, from which it cannot
properly retreat in this appeal.[25]

In Arnao's resentencing, the prosecutor stated that the
government "[doesn't] fully agree with her on ... the notion
essentially that she was following orders, she was doing
whatever Mr. Fumo told her to do, what I call the Svengali
defense." Appx. II, 207 (Tr. 11/16/11, at 17.)  The government
also noted that "Ms. Arnao is certainly responsible.  She
approved it, she wrote the checks." Appx. II, 211 (Tr. 11/16,
at 31-32).  And, in summarizing its position, the prosecutor
stated that the Citizens Alliance fraud "wouldn't have happened
without her." Appx. II, 211 (Tr. 11/16, at 33) (emphasis
added).  See also Appx. II, 212 (Tr. 11/16, at 34).  No further
citation to the record -- although this list could be multiplied
-- is necessary to establish conclusively that the district
court's decision on culpability was not clearly erroneous, in
light of the government's own stated view, which is fully
consistent with the trial record in this respect.

The prosecutor's assessment that Fumo largely had a
directing/authorizing role while Arnao mostly had the executing
role does not establish any sort of abuse of discretion by the

_____

[25] The doctrine of judicial estoppel prevents the government
from playing fast and loose with the courts and thereby
obtaining a litigation advantage from taking such inconsis-
tent positions. See Zedner v. United States, 547 U.S. 489,
503-05 (2006) (rejecting government's particular invocation
of judicial estoppel against defendant in criminal case);
Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 272-73 (3d
Cir. 2012); In re Teleglobe Communications Corp., 493 F.3d
345, 377 (3d Cir. 2007) (explaining doctrine).

court below in determining that Mr. Fumo's "level of contribu-
tion to the victim's loss," 18 U.S.C. § 3664(h), warranted a 50%
allocation of the restitution.  Nor does the government offer
any case saying a different conclusion was required.[26]  The very
lengthy presentation in the government's brief of material from
the record intended to demonstrate Fumo's direction of Arnao in
the Citizens Alliance fraud, U.S. 1st Step Br. 41-60, does not
undermine either the district court's determination that Arnao
made a significant, substantial contribution, in her own way, to
the Citizens Alliance loss, or its discretionary decision to
make each responsible defendant suffer the consequences of his
or her involvement by bearing some of the burden of repayment to
the victim (Citizens Alliance).

As the government's brief notes, had the district court
done what the prosecutor urged and made Fumo responsible
"jointly and severally" for the whole amount, then whatever
percentage the court ordered Arnao to pay would likely have been
no more than symbolic, by virtue of the government's aggressive
collection efforts directed at Fumo.  U.S. 1st Step Br. 72
n.23.[27]  In order to force Arnao to face some of the financial
consequences of <u>her</u> participation in the Citizens Alliance

_____

[26] Even the government's hyperbolic reference to Fumo as
"the dictatorial Senator for life," U.S. Br. 42 (see also
<u>id.</u> 46, 55), cannot negate the importance of Arnao's
different manner of participation in the offense.  <u>Cf.</u> LAR
28.1(d) (duty to refrain from ad hominem attacks on
parties).

[27] As the government is obviously aware, no part of Arnao's
fine of $45,000 would be payable to Citizens Alliance.  <u>But
see</u> U.S. 1st Step Br. 72-73 n.23.

fraud, as it obviously decided was a key part of its sentencing plan for her, the court could not make Fumo's restitution obligation joint and several. Although the timing and direction of any collection efforts after judgment is imposed are largely within the government's discretion, 18 U.S.C. § 3664(m),[28] the statute gives discretion to the court, not to the prosecutor, to integrate a restitution obligation into a defendant's sentence in order to achieve its goals. Id. § 3553(a)(7) ("need" for restitution is one of the "3553(a) factors").

Judge Buckwalter realized that his sentencing objectives for co-defendant Arnao would be partly defeated if he imposed joint and several liability for her part of the Citizens

---

[28] Even this responsibility is shared under the statutory scheme, however. In imposing restitution, the court is directed to set a schedule for payment. 18 U.S.C. § 3664(f)(2). In that connection, the court can consider a defendant's financial circumstances; see id.(f)(2)(A)-(C). Here, Judge Buckwalter chose to require Mr. Fumo, but not Ms. Arnao, to begin "immediately" to pay down his obligations. Compare 1App. 7 (Fumo judgment) with 2FSA 49 (Arnao judgment). To the extent that the government felt there was an illegality in the Arnao judgment with respect to the failure to specify a schedule that impaired its ability to collect the restitution on behalf of Citizens Alliance, see U.S. 1st Step. Br. 74-75 n.24, it should not have dismissed its appeal of that judgment, which had the effect (coupled with Ms. Arnao's own decision not to appeal) of making it final, notwithstanding any errors. (Nor did Ms. Arnao otherwise complain.) See also DDE 945 (5/11/12) (order correcting defect and setting schedule for Arnao's payments). Mr. Fumo, as noted under the Counter-Statement of Facts above, did comply with his obligation to begin payment "immediately" and in fact has now paid all of his very substantial financial obligations under the resentencing judgment, see DDE 943 (praecipe to satisfy judgment, filed 4/11/12), as he had voluntarily and proactively done under the original judgment. Thus, any technical defect in regards to the setting of a schedule is not only waived, but also moot.

Alliance losses on Mr. Fumo.  Thus, the Fumo sentence was affected in this relatively modest way.  In thus carefully fashioning the two defendants' sentences in relation to one another's, with reference to the restitution issue -- which section 3664(h) invites -- the district court did not abuse its statutory discretion.

Nor is the government's argument, U.S. 1st Step Br. 60-66, that Fumo gained far more from the Citizens Alliance fraud than did Arnao, even particularly relevant.  Section 3664(h) does not direct the district court to weigh and compare the relative amounts of "gain" garnered by defendants from the offense for which restitution is being imposed.  The factor other than "economic circumstances" which § 3664(h) says should be "reflec-te[d]" in an apportioned restitution order is not gain obtained, but rather the "level of contribution to the victim's loss."  Thus, analysis of "gain" does not help the government show an abuse of the district court's discretion in imposing 50% rather than 100% of the Citizens Alliance fraud restitution on Mr. Fumo.[29]  It is therefore not surprising that the government cites no authority for its _ipse dixit_ that "apportionment of the

---

[29] For example, the district court could taken into account that Citizens Alliance had paid some $2 million in legal bills on Ms. Arnao's behalf, a "loss" to Citizens Alliance that did not count toward the restitution calculation at all.  (Citizens Alliance did not pay Mr. Fumo's attorneys' fees.)  The court was also aware that on the government's theory, Ms. Arnao had been overpaid some $240,000 when she worked for the state Senate, App. II, 212 (prosecutor's argument), but that it was Mr. Fumo, not she, who was ordered to make restitution for that.

loot" is "a critical factor with regard to apportionment of restitution."  U.S. 1st Step Br. 60.[30]

Judge Buckwalter found as a fact that both Ms. Arnao and Mr. Fumo had the ability to pay their respective shares, App. II, 200, thus providing a solid foundation that the allocation "reflected" their "economic circumstances," as the statute suggests.  In making this determination, he had before him a Pre-Sentence Investigation Report and supporting financial documents for each of them.  The government fails miserably in its effort to demonstrate a clearly erroneous finding, and thus an abuse of discretion, in the court's § 3664(h) apportionment in this regard.  See United States v. Carr, 25 F.3d 1194, 1211–12 (3d Cir. 1994) (no clear error in ruling that defendant had future ability to pay; thus no abuse of discretion in imposing fine); United States v. Hallman, 23 F.3d 821, 827–28 (3d Cir. 1994) (no abuse of discretion under VWPA in finding ability to pay restitution within five years, despite determination of no present ability to pay a fine).

The crux of the government's position on this last point is that the court abused its discretion in not ordering Fumo to pay 100% of the restitution to Citizens Alliance jointly and severally because "Arnao does not have a comparable ability to

---

[30] Congress allows a judge to ensure that a defendant is divested of ill-gotten gains by including a fine (in all cases) and/or a criminal forfeiture of proceeds (if authorized by law) in the sentence, not by manipulating the restitution order.  Judge Buckwalter in this case did include a substantial fine as part of Mr. Fumo's sentence (which he paid off in late 2009).

pay restitution." U.S. 1st Step Br. 68 (emphasis added); see also id. 67 (Fumo has "far superior ability to pay the amount owed to Citizens Alliance"). The government goes on to state that "[h]er ability to pay would be reflected in the payment schedule the court establishes, not the sum of her liability." Id. at 72 n.23. Yet the government, as already noted, concedes that it was not an abuse of discretion for the district court to impose half the restitution on Arnao. And again, as already explicated, the court could not meaningfully have imposed this responsibility on Ms. Arnao if it had also made Fumo jointly and severally responsible to pay the full amount.[31] Undermining its own position on ability to pay, the government goes so far as to state that it would not have been an abuse of discretion for the court to have imposed the full amount on Arnao. Id.

The government contends that "even if she could tap her husband's income (which the government cannot compel), Arnao could not pay the restitution judgment for many, many years. Her own income would allow only minimal payments toward restitution." Id. 69-70. This is disingenuous; current "income" is not the only -- or even the primary -- source available for collection of a restitution obligation. The statutory lien that allows collection of restitution obligations attaches to all of a defendant's "property and rights to property." 18 U.S.C.

---

[31] The government even appears to admit this in that same footnote 23 of its brief.

§ 3613(c).[32]  The government points, _inter alia_, to the Arnao
PSR of July 2009 reporting "that the couple's net worth was
$1,454,581," _id._ 70, that Arnao's separate part of that tidy sum
was at that time somewhere over $100,000,[33] and that at her
resentencing, the government had noted that it is difficult to
reach joint assets.  _Id._ 71, quoting App. II, 212.  _Cf._ _In re
Kane_, 628 F.3d 631 (3d Cir. 2010) (discussing creditors' rights
against joint marital property in New Jersey); _United States v.
One Parcel of Real Property Known as 6109 Grubb Road_, 886 F.2d
618 (3d Cir. 1989) (government's collection power against
entireties property).

The government neglects to mention in connection with the
"net worth" figure that the PSR reported the total assets of Ms.
Arnao and her husband at a value of $2,054,624 in mid-2009,
including three homes, three classic cars and two luxury autos
(in addition to a family car).  Arnao PSR 84.  In terms of
ability to pay, the probation officer also questioned Ms.
Arnao's self-assessed monthly cash flow, in light of a very high
yet unexplained level of monthly purchases on credit cards.  _Id._
85 & n.22.  In fact, she is now apparently paying $1000 per
month toward restitution, _see_ 2FSA 43 (DDE 945 [Order of 4/26/12

---

[32] This "lien arises on the entry of judgment and continues
for 20 years or until the liability is satisfied, remitted,
set aside, or is terminated [by the defendant's death]." _Id._

[33] In fact, the report explicitly identifies $76,536 in a
pension fund and $41,500 in jewelry as separate assets of
Ms. Arnao, and is unclear on the form of ownership of most
of the other assets.  _See_ Arnao PSR (sealed submission), at
84.

amending payment schedule, filed 5/11/12]), which is not a "minimal" amount.

The government's own statements once again support the district court's exercise of discretion in ordering Fumo to pay only half of the Citizens Alliance restitution.  Neither § 3664(h) nor any other statute requires that any victim be assured of prompt, 100% <u>collection</u> of the restitution amount, but only that orders to pay 100% on some schedule be in place. The statute focuses on the defendant's ability to pay, not on the victim's circumstances, in setting that schedule.  <u>See</u> 18 U.S.C. § 3664(f)(2).  It is well known that a vast amount of restitution goes unpaid and uncollected, which casts doubt on how high a priority the government really considers prompt compensation of victims to be.[34]  The government, notably, says nothing in its brief about what effort, if any, it has made (and with what success) to ensure that Ms. Arnao pays her obligated share, either by enforcing the conditions of her supervised release (<u>see</u> 18 U.S.C. § 3563(b)(2), made applicable by

---

[34] In 2004, the Government Accountability Office criticized the Department of Justice for its level of effort (and of success) in collecting criminal debt.  GAO, *Criminal Debt: Actions Still Needed to Address Deficiencies in Justice's Collection Efforts* (Report GAO-04-338, available at <u>www.gao.gov/products/GAO-04-338</u>) (noting that 7% collection rate in 1995-1999 had fallen to about 4% for 2000-2002.  The latest figures, for 2011, indicate an unchanged overall collection rate of 3.8%.  U.S. Dept. of Justice, EOUSA, *U.S. Attys' Annual Statistical Report: Fiscal Year 2011*, table 8C, at 62 (available at <u>www.justice.gov/usao/reading_room/reports/asr2011/11statrpt.pdf</u>.  Worst of all, the collection rate for restitution owing to third-party (non-governmental) victims was only 0.8% nationally in 2011, and just 0.57% in the Eastern District of Pennsylvania.  <u>Id.</u>, table 8B, at 59.

§ 3583(d)), or by utilizing its vast collection powers,[35] even while Mr. Fumo had proactively paid his share in full.  Thus, the court did not abuse its discretion in balancing all the pertinent circumstances of the case, when it imposed just 50% of the Citizens Alliance loss on Mr. Fumo -- in the broader context of imposing upon him a total of $3,435,548 in restitution plus a $411,000 fine -- in order to ensure that Ms. Arnao would in fact be required to pay at least some of that part of the "loss" as part of her sentence.

For these reasons, the district court acted well within its discretion in ordering Mr. Fumo to pay 50% ($783,264.00), of the total restitution obligation of $1,566,128 owed to Citizens Alliance, as part of his sentencing package that required his payment -- under the loss figures approved by this Court on appeal -- of total restitution of nearly $3.5 million to the Pennsylvania State Senate, Independence Seaport Museum, and Citizens Alliance.  1FSA 6 (judgment on resentencing).

---

[35] According to a very recent docket entry, the government filed some time ago a notice for enforcement of the restitution judgment against Ms. Arnao's interest in one of the three properties -- a home in Philadelphia that she is said to own jointly with her husband.  DDE 948 (filed 8/3/12). All three of her real estate properties had been placed under a lis pendens in March 2009 (DDE 628-630), but those notices were released in February 2010 (DDE 826-828).

CONCLUSION

For the reasons set forth in this brief, the district court's exercise of discretion in apportioning the restitution due to Citizens Alliance on a 50/50 basis between Vincent Fumo and Ruth Arnao must be affirmed.  The judgment of sentence should nevertheless again be vacated and remanded for correction of the amount of restitution by either deleting it entirely, eliminating the prejudgment interest, or at least correcting the amount of prejudgment interest to reflect the payments made by Mr. Fumo during the period from the time of the original sentencing to the date of resentencing.

Dated:  August 15, 2012

Respectfully submitted,

*s/Peter Goldberger*
By: PETER GOLDBERGER
    PAMELA A. WILK
    50 Rittenhouse Place
    Ardmore, PA  19003-2276

    (610) 649-8200
    fx: (610) 649-8362
    e:  peter.goldberger@verizon.net

    Counsel for Appellee-
    Cross-Appellant Vincent Fumo

REQUIRED CERTIFICATIONS

A. <u>Bar Membership.</u>  I certify that the attorney whose name and signature appear on this brief is a member of the Bar of this Court.

B. <u>Type-Volume.</u>  This brief was prepared in a 12-point Courier, nonproportional typeface, with no more than 10.5 characters per inch.  Pursuant to Fed.R.App.P. 28.1(e)(3), I certify, based on the word-counting function of my word processing system (XyWrite ver. 4.07), that this brief complies with the 16,500-word type-volume limitation imposed by Fed.R. App.P. 28.1(e)(2)(B)(i), to wit, no more than 12,959 words.

C. <u>Electronic Filing.</u>  I certify pursuant to LAR 31.1(c) that the text of the electronically filed version of this brief is identical to the text in the paper copies of the brief as filed with the Clerk.  The anti-virus program Avast! vers. 7.0, with current updates, has been run against the electronic (PDF) version of this brief before submitting it to this Court's CM/ECF system, and no virus was detected.

_\_\_/Peter Goldberger_____

CERTIFICATE OF SERVICE

On August 15, 2012, I served a copy of the foregoing
document on counsel for the appellant/cross-appellee, the United
States, via this Court's CM/ECF system, addressed to:

John J. Pease, Esq.
Robert A. Zauzmer, Esq.
Assistant U.S. Attorneys
615 Chestnut Street, suite 1250
Philadelphia, PA  19106

_____s/Peter Goldberger_____